FILED
MISSOULA, MT

2006 APR 25  AM 8 44

PATRICK E. DUFFY
BY _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR 06-08-M-DWM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | PROPOSED FINDINGS AND |
| | ) | RECOMMENDATIONS |
| TERRY FRANKLIN HOLT, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## I.  Introduction

Defendant Holt is charged with possession with intent to distribute cocaine, diazepam, and ketamine, all of which were seized during a traffic stop along Interstate 90.  Holt has moved to suppress the evidence, which was found following Holt's consent to a search of his vehicle.  Holt argues that he was subject to questioning that exceeded the scope of the traffic stop and that his consent was a product of that illegal investigation.  The government opposes the motion to suppress.

Following a hearing conducted on referral from Chief United
States District Judge Donald W. Molloy, the following findings
and recommendations are entered pursuant to Rule 59(b), Fed. R.
Crim. P.

## II.   Factual Findings

Defendant Holt was pulled over by Officer Michael Donnelly
of the Montana Highway Patrol for speeding on I-90 shortly before
7:00 a.m. on February 4, 2006.  Officer Donnelly approached the
vehicle, a large SUV, from the rear on the passenger side and, by
shining his flashlight into the interior as he walked forward,
was able to observe a number of items located inside, including
three pieces of luggage as well as a backpack and a large duffel
bag[1], containers of motor oil, antifreeze and windshield washer
fluid, two cell phones, discarded cans of energy drink, and other
items obscured by a large comforter.  Despite cold temperatures,
the officer was concerned that ice was forming in places on the
roadway, and poor weather conditions, the officer observed that
the driver's window and the front and back passenger windows of
the SUV were rolled down.  Donnelly asked the Defendant for his
drivers license, insurance and registration papers and observed
that the Defendant was shaking, nervous and hyper.  The Defendant

---

[1] I am unclear whether the duffel bag was a part of the three pieces of luggage or was
observed separately. In any event, the officer testified to seeing three pieces of luggage partially
concealed by the comforter, and that other items were fully concealed.  While Defendant contests
what the officer could see, I find the officers testimony credible.

stated that he was having trouble locating the documents because the vehicle belonged to a friend, but eventually found the information and gave it to Donnelly.  Holt presented a Canadian driver's license.  Due to the icy road conditions and the fact it was still dark out, Donnelly asked Holt to drive forward roughly 100 yards and pull off of the highway into a nearby rest stop. Holt complied.

Donnelly again approached Holt's vehicle and asked Holt to come back with him to sit in Donnelly's patrol car to "conduct business," which Holt agreed to do.  While the two were in the car, Donnelly wrote Holt a warning for speeding, ran an EPIC check for any record of Holt having crossed the border from Canada into the United States and checked with dispatch for any wants on Holt.  During that time, Donnelly asked Holt questions about where he was coming from, where he was headed and why. Holt stated that he was traveling from Spokane to Butte, that he had left Spokane the previous morning, had spent that night in a hotel in Superior, and that the purpose of the trip was to pick up a friend (the vehicle owner) from a hospital in Butte.  Holt reported that he had been in the U.S. for a ten-day visit. Donnelly continued to observe nervousness and yawning from Holt.

When the checks came back clear, Donnelly completed the warning he had issued and gave it to Holt along with Holt's documents and told him he was free to go.  However, as Holt was

-3-

leaving the vehicle, Donnelly asked if Holt would mind staying to answer more questions.  Holt agreed to stay and talk with the officer.  Donnelly then asked more detailed questions about Holt's travel plans, revealing what appeared to the officer to be inconsistencies and irregularities in Holt's story.  For example, Holt stated that he had left the Spokane area the previous morning to travel to Butte, but stopped driving at noon and checked into a hotel in Superior, Montana, despite the fact that Holt could have reached Butte with but a few more hours of driving.[2]  Holt's explanation for the previous day's truncated travel was that he had "partied hard" the night before his departure and that he was tired.  The reason given for the trip was that Holt's friend had needed hip surgery and that the hospital in Spokane had arranged to have the friend airlifted from Spokane to a hospital in Butte.  Holt then needed to drive to Butte in his friend's car to take him back to Spokane.  Officer Donnelly testified he found this rather odd, the usual course of events being that folks requiring surgery would usually go to Spokane, a larger city with a number of good hospitals, rather than the other way around.  Holt testified that his friend was able to get a better deal on the surgery in Butte, but this does not readily explain why he would need to be airlifted there.

---

[2] Holt told the officer it was only 3 to 3 ½ hours from Spokane to Butte.  Since it is over 300 miles from Spokane to Butte, the officer was properly suspicious of this statement, as well as of other statements made by Holt.

-4-

Holt also stated that his intent was to drive to Butte, pick up
his friend, and return to Spokane, but he told Donnelly that all
of the luggage in the vehicle was his.  Holt attempted to explain
the amount of luggage by saying that he was "down here" for a
stay of "a couple of months," apparently, at least to the
officer, contradicting his earlier statement that his visit to
the U.S. had been for only ten days.[3]  Holt explained that his
friend was in Butte because he was airlifted from a Spokane
hospital to a Butte hospital for hip surgery.

Donnelly eventually asked Holt if there were various types
of drugs in the vehicle which Holt denied.  However, Donnelly
observed a change in Holt's demeanor when he asked specifically
about cocaine in the car, specifically that whereas before Holt
had maintained eye contact when asked about other drugs, once
cocaine was mentioned Holt averted his gaze to his feet and
laughed nervously.  At that point the officer asked Holt for
permission to search the vehicle.  Holt gave verbal and written
consent to the search.  The consent form specifically noted that
Holt was giving consent freely, and the officer reiterated
verbally to Holt that he was in charge and that the officer would
promptly stop the search at any time upon the request of Holt.
Donnelly then advised Holt that Holt could stand anywhere he

[3] On examination, Holt explained that what he meant by "down here" was the southern part of British Columbia, Canada, Holt having come down from the Yukon.  I find this explanation rather disingenuous.

liked during the search and again could end the search at any time. Donnelly did ask Holt to remain in the patrol car for safety reasons but notified him that he could yell out the open window if he wanted to search to cease. Holt remained in the patrol car. Donnelly opened the rear doors of the SUV and looked in several pieces of luggage. In the second piece he found vials and pills which were vacuum packed and which the officer believed to constitute illicit drugs. He returned to the patrol car and handcuffed Holt, stating he was under arrest, and read him his Miranda rights. Holt then volunteered that the vehicle also contained cocaine, which Donnelly located and seized.

## III. Analysis

In arguing for suppression of the drug evidence, Holt relies primarily on United States v. Chavez-Valenzuela, 268 F.3d 719 (9th Cir. 2001). In that case, the defendant was pulled over for a minor traffic violation and required to leave his vehicle and speak to the officer at the side of the road. The officer asked for license and registration and radioed dispatch to run a records check. While awaiting a response, the officer continued to question the defendant at the roadside, asking about the defendant's travel plans and occupation. During the exchange the officer observed the defendant trembling. After seven minutes, dispatch informed the officer there were no problems with the defendant's papers. The officer relayed that information to the

-6-

defendant, and then asked the defendant if there were drugs in
the car.  After the defendant said no, the officer asked for and
received consent to search the vehicle.  The search yielded
methamphetamine.  268 F.3d at 722.

The Ninth Circuit reversed the district court's order
denying the defendant's motion to suppress, concluding that while
the initial stop was proper, the officer's questioning exceeded
the scope of the reason for the stop and therefore constituted an
illegal investigative detention.  268 F.3d at 724-727.  The court
held that an individual's nervousness, without more, is not
sufficient to justify an investigative detention that exceeds the
scope of the traffic stop.  Id. at 726.  The search was illegal
despite the defendant's consent, the court held, because the
consent was obtained as a result of the illegal investigation and
thus not consensual.  Id. at 727.

Although Chavez presents a similar factual scenario, there
are important distinctions between Chavez and this case.  In
Chavez, the panel noted that the stop was at all times an
investigative detention; it did not at any point become a
consensual encounter.  268 F.3d at 724.  The panel noted that the
defendant was subjected to "fishing" questions about his travel
plans and occupation,[4] and then asked a question which implied

---

[4]In a footnote, the panel explained that inquiries during a
traffic stop into "starting point, destination and general travel
plans" are "probably justifiable," whereas a question about the

that the officer suspected him of criminal activity.  Id. at 724-725.  In such circumstances, the panel held, a reasonable person would not believe he was free to leave.  Id. at 724.

By contrast, in this case Donnelly's initial questioning of Holt was restricted to questions about his travel plans.  It was only after Donnelly told Holt he was free to go and Holt agreed to talk further that Donnelly began to ask more probing questions.  There is no ground in this case for finding that Donnelly's questioning occurred during an investigative detention, because Holt had been explicitly told that he was free to go.  Since the questioning that followed did not occur during an investigative detention, it ceases to matter whether the subject matter of the questioning remained within the scope of the stop.  See Schneckloth v. Bustamonte, 412 U.S. 218, 248-249 (1982).

Moreover, unlike the officer in Chavez, Officer Donnelly had ample basis for suspicion of illegal activity.  The officer in Chavez observed nervousness and nothing more, which the panel concluded was insufficient to justify further questioning unrelated to the traffic stop.  268 F.3d at 726-727.  In this case Holt's nervousness was but one of many factors Officer

---

interviewee's occupation exceeds the scope of a Terry stop and is not permitted.  268 F.3d at 725 n.4.  The panel then went on to clarify that these statements regarding the propriety of certain questions should not be treated as definitive.  Id.

Donnelly observed.

Holt was carrying much more personal luggage than would reasonably be necessary for the relatively short trip from Spokane to Butte, even assuming an overnight stay in Butte, and it would certainly be unusual for a person making that trip by car to stop for the night in Superior, Montana, which is but several hours away from Spokane. Other factors suggesting to Officer Donnelly that Holt was on a longer road trip than just a quick trip to Butte and back to Spokane, included the presence of a number of fast food wrappers, empty cans of energy drink, and the fact that Holt had put new tires on his friend's vehicle. In addition Officer Donnelly testified that in his experience, people transporting drugs by car leave the windows open to eliminate the odor of the contraband[5] and keep essential maintenance products such as oil and antifreeze in the car so as to reduce the number of necessary stops. Holt's explanation of his travel plans, regarding both his broader trip from Canada into the United States and his trip from Spokane to Butte, was riddled with apparent inconsistencies and contradictions, including, for example, the bizarre story of the airlift to Butte

---

[5] Holt testified the windows were open because he was a smoker. While that might reasonably explain one, or even two windows being down, it is even more suspect that three were down, especially those on the passenger side given that Holt was looking to his left when the officer arrived, apparently expecting the officer to approach from the driver's side. Officer Donnelly testified he had to tap on the passenger side window, which was not all the way down, just to get Holt's attention when he approached.

from Spokane for medical care for his friend, and the unusual
amount of luggage needed for the trip.  All of these factors,
combined with Holt's nervous demeanor, provided what was absent
in <u>Chavez</u>: a reasonable basis for continued questioning and
eventual inquiry into the presence of drugs in Holt's vehicle.

## IV.   Recommendation

Based on the foregoing, and in particular the conclusion
that Holt was not at the time of his consent subject to an
investigative detention (although one would have been justified),
it is my recommendation that the motion to suppress (dkt #12)
should be DENIED.

DATED this 2Y day of April, 2006.

Leif B. Erickson
United States Magistrate Judge

-10-